**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:

18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-
01893; 19-cv-01781; 19-cv-01783; 19-cv-01866;
19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-
01904; 19-cv-01798; 19-cv-01869; 19-cv-01922;
19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-
07827; 19-cv-01791; 19-cv-01792; 19-cv-01928;
19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-
01929; 19-cv-01803; 19-cv-01806; 19-cv-01906;
19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-
01810; 19-cv-01809; 18-cv-04833; 19-cv-01911;
19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-
01871; 19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-
01931; 19-cv-01918; 19-cv-01873; 19-cv-01924;
19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

### NOTICE OF PLAINTIFF SKATTEFORVALTNINGEN'S MOTION TO EXCLUDE THE PROPOSED TESTIMONY OF DEFENSE EXPERTS MICHAEL S. ROSS, C. FREDERICK REISH, AND KASPER B. PILGAARD

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, dated

June 21, 2024, and the Declaration of Marc A. Weinstein, dated June 21, 2024, with all exhibits

thereto, plaintiff Skatteforvaltningen, by its undersigned attorneys, will move the Court before

the Honorable Lewis A. Kaplan at the Daniel Patrick Moynihan United States Courthouse, 500

Pearl Street, New York, New York, Courtroom 21B, at a date and time to be determined by the

Court, for an order pursuant to Rules 702 and 403 of the Federal Rules of Evidence excluding the

Memorandum Endorsement    In re Customs and Tax Admin., Master Docket 18-md-2865 (LAK)

Plaintiff Skatteforvaltningen ("SKAT") moves to exclude the proposed expert testimony of three defense witnesses pursuant to Rules 702 and 403 of the Federal Rules of Evidence. As explained below, the motion is granted in part and denied in part.

*Reish*

Defendants retained C. Frederick Reish as a proposed expert witness. Mr. Reish represents sponsors and service providers for purposes of plan qualification under the Internal Revenue Code (the "IRC") and IRS audits, and he has served as chair of the Government Affairs Committee of the American Society of Pension Professionals and Actuaries. He has provided three reports, a 19-page primary report and rebuttal and reply reports. The former is the focus of SKAT's motion.[1]

In the main, Mr. Reish's primary report: (1) states that one-person pension plans are legal and commonly used; (2) discusses the criteria that determine whether a plan is "qualified" under the IRC and the IRS's authority to monitor and enforce plan qualification requirements and; and (3) concludes that certain defendant plans were not "shams" and would not have been disqualified under the IRC by the IRS.[2] Plaintiff argues that this proposed testimony should be excluded because it is "riddled with inadmissible instructions of law and legal conclusions regarding the qualification of pension plans."[3]

"It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions."[4] Thus, although expert testimony may aid a jury's understanding of complex terms and concepts, an expert may not "invade the province of the court to determine the applicable law and to instruct the jury as to that law."[5]

To begin with, testimony regarding whether a one-person ("solo") pension plan may be qualified and the ways in which pension plans generally qualify would "usurp . . . the role of the

---

[1]    Dkt 1061 (Pl. Mem.) at 3 n.2.

[2]    Dkt 1062-2 (Reish Report).

[3]    Dkt 1061 (Pl. Mem.) at 10.

[4]    *United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994).

[5]    *F.A.A. v. Landy,* 705 F.2d 624, 632 (2d Cir. 1983); *see Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir. 1992); *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991).

trial judge in instructing the jury as to the applicable law."[6] This is so because the IRC governs plan qualification.[7] Similarly, the IRS's authority to monitor and enforce plan qualification requirements also is a matter of law and, in any case, such subjects — as well as the manner in which the IRS typically exercises these authorities — would lack relevance here. Also irrelevant is Mr. Reish's proposed testimony that one-person plans are used commonly. Mr. Reish's proposed testimony that certain defendant plans were legitimate would tread on the Court's role to determine the law and the jury's role to apply the facts to the law. Finally, his proposed testimony that the IRS would not have disqualified those plans would be speculative, irrelevant, and potentially confusing.[8] Accordingly, Mr. Reish's proposed testimony is excluded in its entirety.

Should plaintiff make a *prima facie* case that defendants' representations that the plans were qualified were false, the Court would consider a proposed jury instruction regarding the criteria for qualification that plaintiff contends were not satisfied.[9]

*Pilgaard*

Defendants retained Kasper Bech Pilgaard, a Danish tax lawyer and former head of section at the Danish National Tax Tribunal, as a proposed expert witness. Defendants propose that Mr. Pilgaard testify regarding "the structure and operations of the Danish government; the two alternative systems in place in Denmark during the relevant time period to obtain a refund of dividend withholding tax and their mechanics; and Danish securities market practices, such as dematerialization of shares, net settlement by custodians, securities lending, and short-selling."[10]

First, the proposed testimony regarding the "structure and operations of the Danish government" is based on the Danish constitution and Danish statutes, regulations, and administrative

---

[6]

*Bilzerian*, 926 F.2d at 1294.

[7]

*See* 26 U.S.C. § 401(a).

[8]

Contrary to defendants' assertion, it is not significant that Mr. Reish's conclusions are the product of his "experience" and not his analysis of "statutes, caselaw, and the like." Dkt 1094 (Def. Mem.) at 11. It is the nature of the conclusions to which the expert proposes to testify rather than the method by which the expert arrived at those conclusions that matters.

[9]

Should a party so request it, the Court would consider also a preliminary instruction concerning some of the topics about which Mr. Reish proposed to testify in order to "aid the jury in understanding the complex regulatory regime concerning plan 'qualification.'" Dkt 1094 (Def. Mem.) at 10.

[10]

Dkt 1094 (Def. Mem.) at 15–16 (cleaned up).

orders.[11]  It therefore would not properly be the subject of expert testimony.[12]  Second, the portion of Mr. Pilgaard's report pertaining to "the two alternative systems . . . to obtain a refund of dividend withholding tax and their mechanics" is based almost entirely on SKAT forms and SKAT website instructions.  Mr. Pilgaard may not "merely read, selectively quote from, or regurgitate . . . evidence" that, "to the extent such evidence is admissible" — a question the Court does not consider here — properly "should be presented to the jury directly."[13]  Thus, this proposed testimony likewise is excluded.

        With regard to the proposed testimony regarding "dematerialization of shares, net settlement by custodians, securities lending, and short-selling," the Court grants plaintiff's motion, at least for the present, because it is difficult to see why expert testimony would be appropriate on these subjects, as they appear to be entirely undisputed to whatever extent they are relevant.  The parties therefore are directed to submit, on or before October 1, 2024, a joint proposed stipulation explaining these matters for presentation to the jury.  In the event they cannot agree in all respects, they shall submit so much as they agree upon and defendant may seek reconsideration of this ruling on a showing as to precisely what part of Mr. Pilgaard's proposed testimony in this area they still wish to present and the alleged basis for receiving it including but not limited to Mr. Pilgaard's qualifications for giving that testimony.

*Ross*

        Defendant Ben-Jacob retained attorney Michael S. Ross, a specialist in attorney ethics, as a proposed expert witness to respond to plaintiff expert Marcia Wagner's report concerning whether Ben-Jacob violated applicable rules of professional conduct.  Plaintiff no longer anticipates calling Ms. Wagner in its case-in-chief.[14]  Accordingly, Ben-Jacob states that he "will not offer [Mr. Ross's] opinions at trial interpreting the Rules of Professional Conduct or applying them to the facts at issue."[15]  The motion to that extent is moot.  Nevertheless, defendants still seek to offer testimony from Mr. Ross regarding "customs and practices in the legal industry."[16]  In particular, Ben-Jacob proposes that Mr. Ross be permitted to testify that: (1) "limited scope legal engagements are a common practice" and an engagement "without a formal written agreement is

---

[11]    Dkt 1062-5 (Pilgaard Decl.) at ¶¶ 13–39.

[12]    *See Bilzerian*, 926 F.2d at 1294.

[13]    *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (internal quotation marks omitted).

[14]    Dkt 1061 (Pl. Mem.) at 2.

[15]    Dkt 1094 (Def. Mem.) at 3.

[16]    *Id.*

not inconsistent with customs in the legal industry;" (2) "Ben-Jacob's reliance on his clients' representations without independently 'vetting' them is consistent with norms in the legal industry and thus further inquiries" were not required; (3) "Ben-Jacob's reliance on his [law firm] colleagues . . . on areas outside of his area of expertise . . . is consistent with legal industry custom and practice."[17]  Plaintiff argues that this testimony should be excluded because "nowhere in his report does Mr. Ross opine on, or even mention, any such customs and practices."[18]  Ross's report, plaintiff contends, "explicitly relies on and applies the ethics rules, not customs or practices in the legal industry, to reach [the] conclusions" about which Ben-Jacob proposes Ross testify.[19]

   Federal Rule of Civil Procedure 26 requires that expert reports "contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them."[20] This requirement "is intended to allow opposing parties to have a reasonable opportunity to prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses."[21] "Absent substantial justification or a showing of harmlessness, expert testimony exceeding the bounds of the expert's report must be excluded."[22]  Expert reports thus "operate[] to limit the scope of the testimony that can be elicited from the expert."[23]

   The remaining portion of Mr. Ross's proposed testimony substantially exceeds the bounds of his expert report.  That document provides, at most, a meager basis for the first proposed subject of his testimony regarding limited scope and unwritten legal engagements.  It states, "[l]imited-scope engagements are common, particularly in the context of sophisticated clients who have their own skill sets and who retain multiple lawyers to perform different tasks for them."[24]  But it does not elaborate.  Instead, the report goes on at great length regarding ethics rules and interpretations thereof, and it provides no indication that industry norms and customs would be of any material significance.  Admitting the proposed testimony on this point, therefore, "would

---

[17]  *Id.* at 3–4.

[18]  Dkt 1105 (Pl. Reply) at 2.

[19]  *Id.* at 3.

[20]  Fed. R. Civ. P. 26(a)(2)(B).

[21]  *Rowe Ent., Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272 (RPP), 2003 WL 22272587, at *1 n.3 (S.D.N.Y. Oct. 2, 2003) (internal quotation and alteration marks omitted).

[22]  *Id.*

[23]  *LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08-cv-8426 (WHP) (HBP), 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012).

[24]  Dkt 1062-1 (Ross Report) at ¶ 51.

undermine the rationale for requiring the [expert] report in the first instance: to provide sufficient notice of an expert's testimony so that the opposing party may prepare for cross-examination or rebuttal."[25]  Next, there is *no* basis in the report for Mr. Ross's proposed testimony regarding the other two topics — that Ben-Jacob's reliance on the representations of his clients and the expertise of his colleagues was consistent with industry customs and practices.  Finally, Ben-Jacob has not suggested, nor does the Court find, that the omission of this proposed testimony from the Ross report was justified, and the omission was not harmless at least because expert discovery has closed and Trial One is approaching quickly.  Accordingly, Mr. Ross's testimony is excluded in its entirety.[26]  This ruling is without prejudice either to defendants offering a revised report with respect to this aspect of Mr. Ross's proposed testimony or, should they do so, to a renewed motion by the plaintiff to exclude his testimony notwithstanding any revised report.

*Conclusion*

      Plaintiff's motion is granted in part and denied in part.

      SO ORDERED.

Dated:      August 4, 2024

                                  Lewis A. Kaplan
                            United States District Judge

---

[25]       *Taylor v. Evans*, No. 94-cv-8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997).

[26]       *See* Fed. R. Civ. P. 37(c)(1).