USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/6/24__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:

18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

**NOTICE OF PLAINTIFF SKATTEFORVALTNINGEN'S**
**MOTION TO EXCLUDE THE TESTIMONY OF DR. EMRE CARR**

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, dated

June 21, 2024, and the Declaration of Marc A. Weinstein, dated June 21, 2024, with all exhibits

thereto, plaintiff Skatteforvaltningen, by its undersigned attorneys, will move the Court before

the Honorable Lewis A. Kaplan at the Daniel Patrick Moynihan United States Courthouse, 500

Pearl Street, New York, New York, Courtroom 21B, at a date and time to be determined by the

Court, for an order pursuant to Rules 702 and 403 of the Federal Rules of Evidence excluding the

<u>Memorandum Endorsement</u>       <u>In re Customs and Tax Admin., Master Docket 18-md-2865 (LAK)</u>

        Defendants retained Dr. Emre Carr, a consultant at FTI Consulting, Inc. and a former economist at the Securities and Exchange Commission, as a proposed expert witness. Dr. Carr provided primary, rebuttal, and reply reports comprising 169 pages. Defendants propose to call Dr. Carr to testify that the transactions engaged in by defendants that served as the predicates for their allegedly fraudulent withholding tax refund claims were "structured finance transactions" consistent with "accepted market practices and provided the pension plans with an economic claim to receive payments of dividend amounts."[1] Plaintiff moves to exclude this proposed testimony on the grounds that it would be unreliable, irrelevant, and likely to prove extremely confusing to the trier of fact.

        Dr. Carr's proposed testimony is based on his analysis of two defendant pension plans' use of the trading strategy at issue in this case. The proposed testimony pertains to "net settlement," a characterization of a situation in which a financial institution or custodian acting on behalf of both buyers and sellers of the same security may settle offsetting trades internally. To the extent that purchases and sales ordered by the institution's customers offset each other and the institution does not need to fill the orders externally, it can settle the purchases and sales in what is called an "internalized settlement," and "the custodian's holdings will not change after these offsetting trades."[2] Here is where the controversy arises. Dr. Carr proposes then to testify that whether the defendant pension plans' custodians held the Danish securities at issue "is irrelevant for assessing the validity of purchases that the pension plans made . . . . because if the Solo Custodians' settlement of the trades involved the settlement of offsetting trades on the same date then it would not require sourcing shares externally."[3] In other words, the pension plans could have purchased Danish securities "irrespective of whether the Solo custodians or any of their clients ever had any shares in the first place."[4]

        To the extent that defendants propose that Dr. Carr testify that defendant pension plans became, or could have become, beneficial owners of Danish securities through trades settled internally by a custodian *without respect for whether that custodian held any shares of that security*, that testimony is excluded as it would be unreliable and irrelevant.

        Federal Rule of Evidence 702 and *Daubert* "assign[] to the district courts the gatekeep[er] function" of ensuring that expert "testimony or evidence . . . is . . . reliable."[5] To fulfill that function, "the district court may consider the gap between the data and the conclusion drawn by the expert from that data, and exclude opinion evidence where the court 'conclude[s] that there

---

[1]       Dkt 1086 (Def. Mem.) at 1–2.

[2]       Dkt 1053-2 (Rebuttal Report) at ¶¶ 113, 116.

[3]       *Id.* at ¶ 111.

[4]       Dkt 1052 (Pl. Mem.) at 8.

[5]       *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017) (internal quotation marks omitted).

is simply too great an analytical gap between the data and the opinion proffered.'"[6]  In other words, a district court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[7]  But that is the only thing underlying Dr. Carr's proposed testimony that beneficial ownership passed, or could have passed, to a defendant pension plan by an internal settlement of offsetting buy and sell orders (the former from the pension plan and the latter from another party) even if the "custodian" that effected the internal settlement held none of the underlying shares purportedly purchased and sold.[8]  Rather, the sources on which Dr. Carr's report relies support only the unremarkable proposition that net settlement and internalization can effectuate the transfer of beneficial ownership if the custodian already holds the asset.[9]  Accordingly, the former proposition is excluded as unreliable.

This proposition is excluded also because it is irrelevant.  The Court held previously that "if a seller does not have any ownership rights in, for instance, a share, the seller cannot convey any ownership rights to a purported buyer."[10]  Thus, if the short sellers from whom "defendants purportedly purchased the shares" "never owned the shares," then defendants could not have "beneficially owned the shares."[11]  Dr. Carr's proposed testimony to the contrary would not "help the trier of fact to understand the evidence or to determine a fact in issue."[12]  Indeed, it would rest on a

---

[6]

       *Id*. at 577 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

[7]

       *Joiner*, 522 U.S. at 146.

[8]

       Indeed, the logic of Dr. Carr's position would lead to the following absurd result.  Suppose XYZ Corporation had issued a total of one million shares and those all were outstanding. Pension Plan A placed an "order to buy" 5 million shares of XYZ with a "custodian" that held no XYZ shares for its own account or the accounts of customers.  At more or less the same time, another party, B, placed an "order to sell" 5 million XYZ shares.  The "custodian" could settle both "trades" internally by offsetting the "purchase" order by Pension Plan A with the "sell" order by B.  In such a situation, none of A, B and the "custodian" ever would have acquired any XYZ shares in any relevant sense.  Indeed, none could have done because, in this hypothetical, the 5 million shares purportedly bought and sold exceeded the total number of XYZ shares in existence.

[9]

       *See* dkt 1086 (Def. Mem.) at 5 (acknowledging that Carr report sources "do not directly say whether 'settlement without shares' was 'possible.'").

[10]

       *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-04051, 2023 WL 8039623, at *8 (S.D.N.Y. Nov. 20, 2023).

[11]

       *Id*. at *9.

[12]

       Fed. R. Evid. 702(a).

3

premise inconsistent with a ruling previously made by the Court. Such testimony, however, would create a significant risk of confusing or misleading the jury and is thus excluded properly under Federal Rule of Evidence 403.

Plaintiff moves also to exclude Dr. Carr from testifying that "SKAT's experts had failed to demonstrate that the pension plans knew about (A) trades to which they were not parties, and (B) whether Solo's holdings included Danish securities."[13] It is well established that experts may not opine on the knowledge possessed by parties.[14] Thus, because plaintiff's experts "may not opine as to the state of mind of" defendant pension plans, any testimony by Dr. Carr that they "failed to do so [would be] both irrelevant and inadmissible."[15]

Plaintiff's motion is granted in part and denied in part.[16]

SO ORDERED.

Dated:      August 6, 2024

Lewis A. Kaplan
United States District Judge

---

[13]

Dkt 1086 (Def. Mem.) at 10.

[14]

*See Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

[15]

*SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 410 (S.D.N.Y. 2019), *on reconsideration in part*, No. 17-cv-1789 (DLC), 2019 WL 2114067 (S.D.N.Y. May 8, 2019).

[16]

The Court's denial of so much of plaintiff's motion as pertains to aspects of Dr. Carr's proposed testimony is not a definitive ruling as to the admissibility of such matters as are discussed in Sections II through V of Dr. Carr's report. It appears that all or most of those matters are or should be undisputed and more appropriately and efficiently be presented to the jury in the form of a stipulation. Accordingly, the parties shall follow the procedure set forth in Dkt 1116 for stipulating to aspects of Mr. Pilgaard's proposed testimony with respect to these aspects of Dr. Carr's proposed testimony as well.