# Exhibit 3

# OPUS2

Skatteforvaltningen v Solo Capital Partners LLP & Others

Day 26MT

June 12, 2024

Opus 2 - Official Court Reporters

Phone: 020 3008 6619
Email: transcripts@opus2.com
Website: https://www.opus2.com

**Page 1**

Wednesday, 12 June 2024

(9.30 am)

Housekeeping

MR JUSTICE ANDREW BAKER: Good morning, Mr Shah. I don't know whether you can see on the screen, Mr Head is on his feet so it may be he wants to raise something with me before we proceed any further.

Mr Head, any difficulty about Mr Shah being with us while you are raising whatever it is you are going to raise?

MR HEAD: No, on the contrary, my Lord, the reason I am on my feet is because we have one short and discrete further point of cross-examination, subject to your lordship of course. The reason I raise it now and didn't raise it previously is because it arises out of Mr Shah's fifth witness statement, the manuscript set of amendments that he provided during the course of his evidence. I have discussed it with my learned friends, there is no objection from anyone, so if it your Lordship doesn't object I will just ask that additional ——

MR JUSTICE ANDREW BAKER: Let me just double-check. Mr Jones?

MR JONES: My Lord, yes. The fifth witness statement arose from what my client said in cross-examination, it

**Page 2**

doesn't seem to me that I can have any objection to this at all.

MR JUSTICE ANDREW BAKER: Mr Rabinowitz?

MR RABINOWITZ: No objection, my Lord.

MR JUSTICE ANDREW BAKER: Thank you very much.

Mr Shah, I don't know whether you follow that explanation, you will remember the process we went through which I slightly triggered that resulted in your short manuscript fifth statement, so that therefore only arose in effect as a supplement to your original evidence-in-chief during the course of your cross-examination and Mr Head on behalf of the DWF defendants has indicated he has just question or two or three to ask you arising out of that and I'm permitting that to happen, all right.

A. Thank you, my Lord.

MR JUSTICE ANDREW BAKER: So there's a few questions from Mr Head before we get to your re-examination. Thank you, Mr Head.

MR SANJAY SHAH (continued)

Further cross-examination by MR HEAD

MR HEAD: Thank you, my Lord.

Good morning, Mr Shah.

A. Good morning.

Q. I will be very brief. Can I ask you firstly to look at

**Page 3**

your first witness statement, please. The reference is {V/27/125} and I would like you to look in particular, please, at paragraph 692 and this is where you deal with your —— the financial relationship with Anupe Dhorajiwala. You see there that you confirm that you didn't enter into a profit share agreement with Anupe relating to the Solo WHT scheme and you say that:

"After Raj left Solo, I offered to give Anupe the deal that Raj had been on (ie profit—sharing agreement alongside me and Graham)."

Do you see that?

A. Yes, I see that.

Q. And in that witness statement at least there is no suggestion that an agreement was concluded or that payments were made. You would agree with that?

A. Yes.

Q. Let me next show you, please, what Mr Dhorajiwala says about that. If we can go, please, to {Y17/34/41}. Page 41 of that document, please. This is Mr Dhorajiwala's witness statement. Thank you. And if you could look, please, at paragraph 92 and in particular starting from the fourth line, Mr Dhorajiwala responds to an allegation that SKAT has made. Just pausing there, I'm not going to go to it, but just for your Lordship's note, that is an allegation that SKAT

**Page 4**

makes at schedule 5 appended to the particulars of claim which is at {B/44.1/5}.

Responding to that allegation he says:

"I understand that SKAT has alleged that Sanjay and I agreed I would be entitled to at least 20% of the net income earned by Ganymede from WHT applications at least from April 2013. This is not correct. We had a discussion about this but no agreement was reached and it was not something I pushed for at the time."

So you see what he says there?

A. Yes, I see that.

Q. Then going now, please, to your fifth witness statement, the manuscript document that you produced during the course of your oral evidence to the court, and that is at {V/39/2}, please. You are dealing with paragraph 687, at the top of the page, of your original witness statement. Again, I don't think we need to go to it, but that is a section which deals with various items of remuneration and you see in (iii) of that manuscript note you say that:

"Anupe was paid 20% of Ganymede's profits from when Raj left until when he (Anupe) left Solo."

So in your fifth witness statement you appear to go further or to give a slightly different account from that in your first witness statement and you suggest

1     correspondingly but not exactly matching as a matter of
2     arithmetic a loss on the futures hedge.
3  MR GOLDSMITH: Yes.
4  MR JUSTICE ANDREW BAKER: And because they don't correspond
5     exactly, there is then still at that point
6     a differential that is not exactly matched by the
7     combination of the net dividend figure and the various
8     interest rate related elements and stock lending fees
9     and so on. I have got all of that.
10 MR GOLDSMITH: Yes.
11 MR JUSTICE ANDREW BAKER: But am I right then to think that
12    the page 94 reference to stock lending interest of
13    557,158, if that is lifted from the statement, that will
14    be a figure that has been calculated using a daily mark
15    to market basis for doing the interest calculation that
16    did not match the trade confirmation if the trade
17    confirmation for the stock loan says "fixed cash pool"
18    and, going back to the point you and I did discuss
19    yesterday, the cash —— the principal cash collateral
20    amount as posted in the accounts was on day one the full
21    equity purchase and then from day two forwards the full
22    equity price minus the net dividend amount?
23 MR GOLDSMITH: So the oddity, my Lord, is that for the
24    principal amount of the cash collateral it is mark to
25    market, as we saw yesterday, and that is why at the end

9

1     of the day the cash collateral returned matches the
2     unwind equity price.
3  MR JUSTICE ANDREW BAKER: Yes.
4  MR GOLDSMITH: But the interest actually is not mark to
5     market. I didn't take Mr Shah to that yesterday because
6     he accepted ——
7  MR JUSTICE ANDREW BAKER: We did deal with that on Day 20MT,
8     and perhaps I'm forgetting that.
9  MR GOLDSMITH: Yes, we can look at it now, if you like.
10 MR JUSTICE ANDREW BAKER: Don't worry.
11 MR GOLDSMITH: But in essence the formula is original cash
12    collateral minus dividend compensation payment minus
13    accrued interest and then times the multiplier for the
14    interest rates, so that figure actually is not based on
15    the mark to market.
16 MR JUSTICE ANDREW BAKER: Although in that section of the
17    statement that one would get to by looking up page 94
18    you do in fact end up seeing lots of those individual
19    day by day, mark to market numbers ——
20 MR GOLDSMITH: Yes, yes.
21 MR JUSTICE ANDREW BAKER: —— and a few columns away you see
22    also a daily interest amount, that daily interest amount
23    figure is not in fact being calculated by reference to
24    those current mark to market daily value numbers.
25 MR GOLDSMITH: Exactly, my Lord.

10

1  MR JUSTICE ANDREW BAKER: That is the detail I had
2     forgotten. That is very helpful for me, thank you,
3     Mr Goldsmith.
4     My other point, it does relate to the same topic but
5     this time will give rise to a question for Mr Shah from
6     me before I then ask you to re—examine, Mr Jones. Can
7     we have back on screen the part of Mr Shah's evidence
8     that Mr Goldsmith used yesterday as a starting point for
9     some of his additional questions, so that is Day 20MT
10    and I am interested in page 137, please.
11    {day20MT/137:9}.
12    Do you remember, Mr Shah, Mr Goldsmith going back to
13    this passage of your evidence yesterday and then he had
14    various additional questions, all right?
15 A. Yes.
16 MR JUSTICE ANDREW BAKER: I am not by any means wanting to
17    go back over what you were asked about yesterday, if
18    there are questions in re—examination from Mr Jones
19    about that, that is a matter for him. It is a different
20    but quite specific point that I was reminded of that
21    I should perhaps have asked about back on Day 20MT, but
22    there it is.
23    Do you see at line 9 you say, and it is one of the
24    occasions where you say something of this type, that you
25    think what has happened is that there has been in effect

11

1     an error or you then call it "a bug" at the stage of
2     initially producing statements that had to be corrected
3     later, all right. That is what you say and I'm not
4     going to go back over that.
5     But what you do then say at line 12 when you call it
6     a bug, you say, and 13:
7     "Answer: ... I don't know if that was fixed later
8     on when the statements were automated ..."
9     Do you see that?
10 A. Yes, I see that.
11 MR JUSTICE ANDREW BAKER: When you talk there about an
12    automated process for producing statements, is that part
13    and parcel of what becomes Octave and Brokermesh and all
14    of that, or is that something different?
15 A. No, that's my understanding from 2015 when the trading
16    was automated, I believe that the statement production
17    was automated. I don't know for sure. That is what
18    I think should have happened.
19 MR JUSTICE ANDREW BAKER: Just in terms of what your
20    evidence was and what you meant by that answer, you had
21    in mind, you are saying, that documents equivalent to
22    the client—facing account statements that Mr Goldsmith
23    was going through with you once Brokermesh and Octave
24    were online were all produced as part and parcel of that
25    automated system?

12

| | |
|---|---|
| 1  A. Yes, TAS recorded all the historic data, so it would | 1  A. Okay. Okay, I have read the question and the answer. |
| 2     have been possible to produce an automated statement | 2  Q. Thank you very much. I'm now going to ask you some |
| 3     from using the data in TAS. | 3     questions in a moment about the rebuttal letter that you |
| 4  MR JUSTICE ANDREW BAKER: All right, thank you very much. | 4     referred to in the last sentence of your answer. So |
| 5     I don't have anything else. That clarifies for me what | 5     those two documents can go. Could they be replaced, |
| 6     you meant by that particular reference to automation. | 6     please, with {MTKC1/145/4}. |
| 7     Thank you. | 7        So if we can go towards the top of page 4, this is |
| 8        Yes, Mr Jones. | 8     an email sent from Guenther Grant-Klar to you and |
| 9  MR JONES: My Lord, I just want to introduce what I am going | 9     Mr Rajen Shah, setting out the draft text of the |
| 10    to say, both for your Lordship's benefit and for | 10    proposed response to PwC. If you want to see page 3, |
| 11    Mr Shah's. | 11    just to remind yourself of that, please say so. But do |
| 12 MR JUSTICE ANDREW BAKER: Yes, thank you. | 12    you recall receiving that draft text? |
| 13 MR JONES: We have done some uploads into Opus yesterday for | 13 A. Yes, I do recall that draft. |
| 14    the purposes of this re-examination. There is some | 14 Q. Thank you. If then, please, we could go to page |
| 15    issue that has arisen as to whether one or two or a few | 15    {MTKC1/145/1} of this document. Thank you. We can see |
| 16    of those documents have previously been disclosed. I am | 16    halfway down the page that Mr Rajen Shah provides |
| 17    pretty confident that we will resolve that so your | 17    comments in two emails, the first of which is 7 December |
| 18    Lordship is not going to be troubled by it. If | 18    at 19:38 and the second is a little later, at 19:54. If |
| 19    I stumble from time to time, it is because I'm trying to | 19    you would read those two emails to yourself, please. |
| 20    ensure that the teams behind me and to my left can | 20 A. Okay. Okay, I have finished that. |
| 21    resolve that before I get to those, and therefore I may | 21 Q. Thank you. Would you read then at the top of the page |
| 22    pass over a subject, Mr Shah, and come back to it. | 22    your response with your own comments, just to remind |
| 23       But if I do, that's the reason and I'm hoping your | 23    yourself of what you said in 2010. |
| 24    Lordship will not be troubled with it and Mr Shah won't | 24 A. Okay, thank you. I have read that. |
| 25    be either. | 25 Q. Thank you very much. May we now go, please, new |

13

15

| | |
|---|---|
| 1  MR JUSTICE ANDREW BAKER: All right, thank you. | 1     document, to {MTKC1/146/1}. I want page 1 of it, |
| 2        Re-examination by MR JONES | 2     please. Thank you. So in the middle of the page can |
| 3  MR JONES: Mr Shah, good morning. I am going to try and | 3     you see an email from you to Mr Murphy at PwC, saying: |
| 4     give you and everyone else subject headings as we go | 4        "Please see attached letter and kindly confirm |
| 5     through so you have a moment to understand the subject | 5     receipt." |
| 6     that I want to ask you about. | 6  A. Yes, I can see that. |
| 7        The first one, please, is PwC's resignation. And in | 7  Q. Do you recall sending him a letter -- that's the first |
| 8     order to ask you a few questions about that, could we | 8     question, do you recall doing that? |
| 9     have up on screen the transcript for {day17MT/81} and | 9  A. Yes, yes, I would call that the rebuttal letter. |
| 10    {day17MT/82}. If they could be put side by side, that | 10 Q. And that's the rebuttal letter that you were referring |
| 11    would be very helpful. | 11    to in your answers to Mr Rabinowitz? |
| 12       Whilst that is being done, Mr Shah, you were asked | 12 A. Yes, that was the one that was drafted by |
| 13    questions about the resignation of PwC in relation to | 13    Guenther Grant-Klar on the previous email. |
| 14    the Broadgate Fund transaction and I just want to remind | 14 Q. Now, we can't see the attachment there, but the |
| 15    you of two parts of that evidence. | 15    attachment is at MTKC1 -- |
| 16       The first part is on page 81 and would you read, | 16 MR JUSTICE ANDREW BAKER: Just before we leave that |
| 17    please, your answer between lines 14 and 18. Just read | 17    document, is that you in the top email, then, forwarding |
| 18    it to yourself. | 18    that to Mr Markowitz, one of the Argre principals and |
| 19 A. Okay. Okay, I can see it now. | 19    attaching the letter as actually sent to PwC? |
| 20 Q. 14 to 18. | 20 A. Yes, that would be that, and the context is that |
| 21 A. Okay, I have read that. | 21    Richard Markowitz was one of the investors in the fund. |
| 22 Q. Thank you. If you look on the right-hand page, that | 22 MR JUSTICE ANDREW BAKER: Yes. Thank you. |
| 23    should be page 82, would you read to yourself, the | 23 MR JONES: I am grateful. |
| 24    question put to you and your answer, which you will find | 24 MR JUSTICE ANDREW BAKER: So the reference you are going to, |
| 25    between lines 9 and 20. {day17MT/82:9}. | 25    giving it a trial reference, is this PwC underlying |

14

16